CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
OCT 2 3 2009
JOHN F. CORCORAN, CLERK
BY: /s/ 
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 6:07cr00031-4 |
| v. | <u>2255 MEMORANDUM OPINION</u> |
| DENNIS BLAKE SINGLETON | By: Norman K. Moon<br>United States District Judge |

Dennis Blake Singleton, a federal inmate proceeding <u>pro se</u>, filed this motion, pursuant to 28 U.S.C. § 2255, challenging his guilty plea and convictions for conspiring to possess with the intent to distribute methamphetamine and possessing a firearm as a felon. Singleton claims that his plea was not knowing and voluntary, that he was denied the effective assistance of counsel, and that his convictions and sentence are unlawful. The court finds that Singleton's guilty plea was knowing and voluntary, that he waived his right to collaterally attack his plea and conviction, and that his claims nevertheless fail on the merits. Accordingly, the court grants the United States' motion to dismiss Singleton's § 2255 motion.

I.

On August 9, 2007, Singleton was charged in an indictment, returned by a grand jury in the Western District of Virginia, with conspiring to possess with the intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. § 846 (Count One); three counts of distributing a measurable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts Seven, Eight, and Nine); and possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Ten). On February 25, 2008, pursuant to a written plea agreement, Singleton pled guilty to Counts One and Ten. Under the terms of the plea agreement, the United States agreed, <u>inter alia</u>, to move for dismissal of Counts Seven, Eight, and Nine; to not seek an enhancement for Singleton's role in the offense; and to recommend a two-level reduction in the offense level for Singleton's acceptance of

responsibility. In exchange for these concessions, Singleton waived, inter alia, his right to appeal sentencing guideline issues and to collaterally attack his convictions and sentence.

Singleton initialed every page of the plea agreement, including the page containing the waiver of appeal and collateral-attack rights. By signing the plea agreement, Singleton affirmed that he had read the plea agreement, that he had carefully reviewed every part of the agreement with his attorney, that he understood the agreement, and that he was voluntarily agreeing to its terms.

At his plea hearing, Singleton stated under oath that he graduated high school, that he was in good health, and that he was not under the influence of any medication or alcoholic beverage. The court established that Singleton was aware of the nature of the charges against him, that he understood the range of punishment that he faced, that he understood how the United States Sentencing Guidelines might apply in his case, and that he knew that he had the right to a jury trial. Singleton affirmed that he had discussed the plea agreement with his attorney before he signed it, and that no one had made any promises or induced him to plead guilty. The court established that Singleton was aware that he would be bound by his plea agreement, even if his sentence was more severe than he expected. Singleton also affirmed that he was "fully satisfied with the counsel, representation, and advice" that his attorney had provided.

During the hearing, the court instructed counsel to review the salient portions of the plea agreement that Singleton had reached with the United States. The court asked Singleton if he read and understood the agreement before he signed it. Singleton responded in the affirmative. The court then asked if the agreement described by counsel was contrary to his own understanding of the agreement, to which Singleton responded, "[n]o, sir." The court also asked Singleton if he was voluntarily waiving his right to collaterally attack the judgment, to which Singleton responded, "[y]es, sir."

After all of the court's questions, Singleton stated that he still wanted to plead guilty. The court ultimately accepted Singleton's plea and found that Singleton was "fully competent and capable of

2

Case 6:07-cr-00031-NKM-mfu Document 299 Filed 10/23/09 Page 2 of 11 Pageid#: 1638

entering an informed plea; that [his] plea[] of guilty [is a] knowing and voluntary plea[] supported by an independent basis in fact containing each of the essential elements of the offense[] . . . ."

On May 28, 2008, the court sentenced Singleton within the applicable guideline range, to a total term of imprisonment of 298 months. Before the court pronounced the sentence, Singleton was given the opportunity to address the court. At that time, Singleton did not express any desire to withdraw from the plea agreement, or voice any complaints regarding the quality and effectiveness of his attorney's representation. Singleton did not appeal his conviction or sentence.

On May 6, 2009, Singleton filed the instant § 2255 motion, claiming that his plea was not knowing and voluntary, that his firearm conviction is unconstitutional because it violates his Second Amendment right to bear arms, that the calculation of his drug weight was "erroneous and unjustly attributed to [him]," that using his past criminal history violated double jeopardy, and that counsel provided ineffective assistance. In support of his claim of ineffective assistance of counsel, Singleton claims that counsel: (1) did not object to the Pre-sentence Investigative Report ("PSR"); (2) did not assist in the appeal process; (3) "lied" to Singleton about the length of his sentence; and (4) "forced" Singleton to take the stand at his sentencing hearing and then interrogated him, which "caused" Singleton to admit the drug weight.

II.

Singleton alleges that his plea was not voluntarily and knowingly made because he "did not comprehend or understand most of the court proceedings" due to a hearing impairment. In support of his claim, Singleton states that "no one took the necessary steps to ensure that he would be able to hear the proceedings." However, a review of the transcripts of Singleton's plea and sentencing hearings indicates that Singleton never once mentioned any hearing impairment to the court during either of those

3

proceedings. Further, when asked questions by the court, his counsel, and the attorney for United States, Singleton answered each question and never asked anyone to repeat a question or indicated that he did not hear anything that was said. Still further, in his interview with the probation officer, although Singleton reported several other ailments he suffered, he did not state that he had any hearing impairment. Accordingly, the court finds that his claim that he did not comprehend or understand the court proceedings because of a hearing impairment is incredible.

To the extent he challenges the validity of his plea beyond any alleged hearing impairment, this claim contrasts sharply with the statements Singleton made during his plea colloquy, when he affirmed that he completely understood the terms of the plea agreement including each waiver, that he was entering the plea and waiving his collateral-attack rights knowingly and voluntarily, that he was completely and fully satisfied with his attorney's representation, and that he did not challenge the government's evidence against him.[1] The court took care to ensure that Singleton was entering his plea both knowingly and voluntarily by reviewing the provisions until the court was fully satisfied that Singleton understood. The court made findings on the record at the plea hearing that Singleton was competent to plead and that he voluntarily and knowingly entered his plea. These findings were not mere formalities but rather reflected the court's considered opinion that Singleton was in fact fully competent and that his plea was knowing and voluntary. Nothing that has followed has dispelled that conclusion. Accordingly, the court finds that Singleton's challenges to the validity of his plea have no merit and, therefore, dismisses his claim.

### III.

Singleton raises several other claims regarding the legality of his convictions and sentence and the

---

[1] "[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity,' because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005), (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977); and citing United States v. Bowman, 348 F.3d 408, 417 (4th Cir. 2003)). Because the declarations carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings. United States v. White, 366 F.3d 291, 295-96 (4th Cir. 2004) (quoting Blackledge, 431 U.S. at 74).

4

effectiveness of counsel's representation. However, Singleton knowingly and voluntarily waived his right to collaterally attack his plea and sentence, and most of Singleton's claims of ineffective assistance claims fall within the scope of that waiver. Therefore, these claims must be dismissed.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Waivers of collateral review are analyzed under a two-part analysis in which both the validity and the scope of the waiver are considered. See, e.g., United States v. Attar, 38 F.3d 727, 731-33 (4th Cir. 1994) (holding that a waiver will be enforced if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver). To be valid, "the record must show that the waiver was based upon a knowing and intelligent decision." United States v. General, 278 F.3d 389, 400 (4th Cir. 2002) (internal quotation marks omitted). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221-22; see also United States v. Brown, 232 F.3d 399, 405-06 (4th Cir. 2000) (holding that a defendant's statements during the plea colloquy and evidence that he discussed the terms of the waiver provision with counsel and fully understood them provide powerful evidence that the waiver is valid). If the court determines that a petitioner's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. Lemaster, 403 F.3d at 220 (internal quotations and citations omitted). Although the validity determination is often made based on the "adequacy of the plea colloquy–specifically, whether the district court questioned the defendant about the . . . waiver–the issue ultimately is 'evaluated by reference to the totality of the circumstances.'" United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005)

(quoting United States v. General, 278 F.3d 389, 400 (4th Cir. 2002)). Thus, the determination "'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Id. (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)).

That does not end the inquiry, however. The court must also consider the scope of the plea agreement waiver: that is, whether it prevents the court from considering the particular claims the defendant asserts in his § 2255 motion. The United States Court of Appeals for the Fourth Circuit has distinguished a narrow class of claims that fall outside the scope of an enforceable waiver of direct appeal and § 2255 rights. Issues that a defendant could not have reasonably foreseen when entering into a plea agreement, such as the complete denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on a constitutionally impermissible factor such as race, fall outside the scope of the waiver. See Attar, 38 F.3d at 732; Lemaster, 403 F.3d at 220 n.2; United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); Blick, 408 F.3d at 169-71. Thus, in addition to evaluating the validity of Singleton's guilty plea and waiver of collateral attack rights, the court must determine whether his claims falls within the scope of that waiver.

Here, the court has already determined that Singleton knowingly and voluntarily entered a valid guilty plea and the record fully establishes that Singleton also knowingly and voluntarily waived his right to collaterally attack his sentence, including any proceeding brought under § 2255. In his plea agreement, Singleton specifically agreed to "waive [his] right to collaterally attack, pursuant to Title 28, United States Code, Section 2255, the judgment and any part of the sentence imposed upon [him] by the Court." The language and meaning of the collateral-attack waiver is clear and unmistakable, and both Singleton and his attorney represented by their signatures to the plea agreement that Singleton had been fully advised of,

6

and understood, its terms. In his plea agreement, Singleton also agreed to "make known to the Court no later than at the time of sentencing any dissatisfaction or complaint [he] may have with [his] attorney's representation." He also "waive[d] any claim [he] may have for ineffective assistance of counsel known and not raised by [him] with the Court at the time of sentencing." Further, at his plea hearing, Singleton acknowledged that he was voluntarily waiving his right to collaterally attack his judgment and indicated that he was fully satisfied with the counsel, representation, and advice given to him in this case by his attorney. Accordingly, the court concludes that Singleton's waiver of his right to collaterally attack his conviction or sentence under § 2255 is valid and enforceable.

Finding that the waiver is valid, the court must now determine whether Singleton's claims are included within the scope of the waiver. All but one of Singleton's claims fall within the scope of his enforceable waiver. The only claim that the court will consider outside the scope of his waiver is his claim that counsel was ineffective in failing to "assist in any appeal process," because it alleges a complete denial of counsel. This claim will be addressed infra. The court finds that Singleton's remaining claims challenging the legality of his convictions and sentence and effectiveness of counsel's representation fall within the scope of his waiver and, therefore, are not cognizable claims in a § 2255 motion. Accordingly, the court dismisses these claims.2

---

² Moreover, Singleton's claims of ineffective assistance fail on the merits and his claims regarding the legality of his convictions and sentence are both procedurally defaulted and meritless.

To demonstrate ineffective assistance of counsel, a petitioner must first show deficient performance, that is, that counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687-91 (1984); see also Williams v. Taylor, 529 U.S. 362 (2000). Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. Strickland, 466 U.S. at 689; see also Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983); Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977). In addition to proving deficient performance, a petitioner asserting ineffective assistance must prove that he suffered prejudice as a result of his counsel's deficient performance, that is, petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. More critically here, a petitioner who alleges ineffective assistance of counsel following entry of a guilty plea has an even higher burden to meet. See Hill v. Lockhart, 474 U.S. 52, 53-57 (1985); Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has described the petitioner's additional burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the

7

# IV.

Singleton's claim that counsel was ineffective in failing to assist in the appeal process fails on the merits. Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a defendant must first show that counsel's representation fell below an objective standard of reasonableness, and second, that counsel's defective performance prejudiced defendant. Id. at 688, 694. This same test is applicable to those situations where counsel was allegedly ineffective by failing to file a notice of appeal. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). To establish a Sixth Amendment violation based on counsel's failure to note an appeal, Singleton must prove that counsel was ineffective, and but for that ineffectiveness, an appeal would have been filed. United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000) (citing Flores-Ortega, 528 U.S. 470). The inmate need not show a reasonable probability of success on appeal. See Peguero v. United States, 526 U.S. 23, 28 (1999).

Where a defendant instructs his attorney to file an appeal and counsel fails to do so, counsel's

---

[Strickland] test is slightly modified. Such a defendant must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hooper, 845 F.2d at 475; accord Hill, 474 U.S. at 59; and Fields, 956 F.2d at 1297. The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins, 724 F.2d at 1430-31). If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). With regard to all of his ineffective assistance of counsel claims, Singleton does not allege that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial. Accordingly, Singleton has not demonstrated prejudice as to his claims and, therefore, the court finds that his ineffective assistance of counsel claims have no merit.

Singleton's claims concerning the legality of his convictions and sentence are procedurally defaulted and have no merit. The Supreme Court has noted that "habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998). Claims that could have been, but were not, raised on direct appeal are procedurally defaulted. Id. In the instant case, although Singleton's claims could have been raised on direct appeal, he did not raise them on appeal. Therefore, the court finds that his claims regarding the legality of his convictions and sentence are procedurally defaulted.

The court notes, however, that there are two instances when a procedurally defaulted claim may be considered on collateral review. First, a defaulted claim may be raised in a § 2255 proceeding if the petitioner demonstrates both cause for the default and actual prejudice from the failure to review the claim. Bousely, 523 U.S. at 622; United States v. Frady, 456 U.S. 152, 170 (1972); Wainwright v. Sykes, 433 U.S. 72, 84 (1977); United States v. Mikalajunas, 186 F.3d 490, 492-95 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994). In the alternative, a defaulted claim may be raised if the petitioner can demonstrate that he is actually innocent. Schlup v. Delo, 513 U.S. 298, 321 (1995); Mikalajunas, 186 F.3d at 493. In the instant case, Singleton does not allege that he actually innocent of the crimes for which he was convicted, and he has offered no explanation to show cause to excuse his default. Accordingly, the court finds that his claims are procedurally defaulted and not cognizable on habeas review.

representation is per se ineffective. Witherspoon, 231 F.3d at 926; accord Flores-Ortega, 528 U.S. at 477 ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). However, where the defendant neither instructs his attorney to note an appeal nor explicitly states that he does not wish to appeal, counsel's deficiency in failing to appeal is determined by asking whether counsel consulted with defendant about an appeal. Flores-Ortega, 528 U.S. at 478; Witherspoon, 231 F.3d at 926. Consult means "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478. If counsel has consulted with defendant, the question of deficient performance is easily answered, as counsel performs in a professionally unreasonable manner only by failing to follow defendant's express instructions with respect to an appeal. Id. If counsel has not consulted with defendant, the court must then determine whether counsel's failure to consult with the defendant itself constitutes deficient performance. Id.

Not every failure to consult results in constitutionally deficient performance. Id. at 479. Rather, counsel only has a constitutionally imposed duty to consult where there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal) or (2) that the defendant reasonably demonstrated to counsel that he was interested in appealing. Id. at 480. "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. at 480. Nonetheless, despite the fact that a defendant pled guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea agreement waived his right to appeal. Id.

Singleton does not allege that he explicitly asked counsel to file a notice of appeal or that he

9

reasonably demonstrated to counsel that he was interested in appealing. However, Singleton does allege that counsel did not explain Singleton's appeal rights to him. The government did not respond to Singleton's allegation. Accordingly, the court will assume without deciding that counsel did not consult with Singleton regarding an appeal. Inasmuch as Singleton does not allege that he demonstrated an interest in appealing, counsel only has a constitutionally imposed duty to consult with his client where there is reason to think that a rational defendant would want to appeal. In this particular situation, the court finds that a rational defendant in Singleton's position would not want to appeal.

Singleton waived his right to appeal in his plea agreement. Although he does not allege what ground he would have raised on appeal, based on the waiver in his plea agreement, the only claims which Singleton could have raised, despite the waiver, were that the sentence was imposed in excess of the maximum penalty allowed or was based on the consideration of a constitutionally impermissible factor such as race. United States v. Lemaster, 403 F.3d 216, 218 n.2 (4th Cir. 2005) (citing United States v. Marin, 961 F.2d 493 (4th Cir. 1992)). As Singleton does not allege any facts that would support either of these grounds for appeal, the court finds that Singleton has not demonstrated that he had any non-frivolous grounds on which to base his appeal. Moreover, in exchange for his guilty plea and waivers of his rights to appeal sentencing guideline factors and collaterally attack, Singleton received significant benefits for his bargain. Pursuant to the plea agreement, the United States agreed to dismiss three other counts of the indictment, Singleton received a reduction in his total offense level for his acceptance of responsibility, the United States agreed not to seek an enhancement based on his leadership role in the offense, and the agreement left open the possibility that Singleton could earn a motion for substantial assistance. Without the benefit of the plea agreement, Singleton faced additional convictions on Counts Seven, Eight, and Nine of the indictment. In additions, without the benefit of the reduction in his offense level for acceptance of responsibility, Singleton's guideline calculation would have resulted in an offense

10

Case 6:07-cr-00031-NKM-mfu   Document 299   Filed 10/23/09   Page 10 of 11   Pageid#: 1646

level of 37 and criminal history category of VI, yielding a guideline range of imprisonment of 360 months to life. Further, had the government filed a motion for enhanced penalty pursuant to 18 U.S.C. § 851, Singleton would have faced a mandatory life sentence.

In light of Singleton's waiver of his right to appeal any sentencing guideline factors, the apparent absence of any non-frivolous ground for appeal, the significant benefit to Singleton's plea bargain, and the fact that the court clearly apprised Singleton of his right to appeal at his sentencing hearing, the court finds that counsel was not ineffective in failing to assist in the appeal process. Accordingly, the court dismisses his claim.

V.

For the reasons stated above, the court will grant the United States' motion to dismiss Singleton's § 2255 motion.

ENTER: This 23rd day of October, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE